UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS A. NERSWICK,

                    Plaintiff,

          v.                                    C-1-07-461

CSX TRANSPORTATION, INC., et al.,

                    Defendants.

## ORDER

This matter is before the Court upon defendants' motion for summary judgment (doc.

24), plaintiff's opposing memorandum (doc. 27), and defendants' reply (doc. 35). Defendants

have filed proposed findings of fact and conclusions of law, which plaintiff has highlighted as

true, false or irrelevant (doc. 44). An oral hearing was held on August 5, 2009. Following the

hearing, the parties filed supplemental briefs, which are also before the Court in connection with

the summary judgment motion. Docs. 48, 50, 51.

## I. Background

Plaintiff Thomas A. Nerswick brings this action against defendants CSX Transportation,

Inc. (CSXT) and CSXT police officers James Dugger and Chris Minges. Plaintiff asserts claims

under 42 U.S.C. §§ 1983 and 1988 for violations of his rights under the Fourth, Fifth, Eighth and

Fourteenth Amendments to the United States Constitution. Plaintiff also brings claims for

violations of his rights under Article I, §§ 1, 9 and 14 of the Ohio Constitution and under Ohio

law for false arrest and imprisonment, malicious prosecution, assault, battery, negligence, and

infliction of emotional distress.[1]

## II. Allegations of the amended complaint

Plaintiff makes the following allegations in the amended complaint: On or about June 9, 2006, an individual employed by plaintiff at his place of business located on Hopple Street in Cincinnati, Ohio, came into plaintiff's office to inform him that two pieces of metal had fallen into the road in front of the office. Plaintiff went outside and saw two large pieces of metal in the road and cars swerving to avoid the metal and driving onto the sidewalk around the metal. Plaintiff retrieved the metal, placed it into his van to get it off the street, and took it to a recycling business that was very close to his business. The recycling center paid plaintiff $310.00 for the metal.

Several days later, during the business day while plaintiff was in his vehicle with several clients, defendants contacted plaintiff by telephone from plaintiff's home in Fort Mitchell, Kentucky. They demanded that plaintiff immediately pull his car to the side of the road and wait for them to arrive. After explaining that he was with clients, plaintiff arranged to meet with defendants the next day. Plaintiff met with defendants on June 13, 2006. At that time, Dugger and Minges stated that they knew plaintiff possessed some metal belonging to "Defendant" and that they had a warrant for his arrest. Plaintiff told Dugger and Minges that he had found the abandoned metal in the middle of the street, it was causing a dangerous situation, he had picked it up and placed it in his van to avoid further danger, and he had taken it to the scrap yard for disposal. He stated there was evidence and he had witnesses to corroborate his version of the

---

[1]Although plaintiff did not claim the existence of diversity jurisdiction in the amended complaint, he represented at oral arguments, and defendants do not dispute, that diversity requirements are satisfied in this case.

facts. Defendants refused to listen to plaintiff or to investigate the facts. They handcuffed plaintiff, placed him in their company vehicle, and took him to their corporate office, where they interrogated him. They informed him that they were taking him to jail and charging him with receiving stolen property under Ohio Rev. Code § 2913.51.

Plaintiff was then handcuffed and escorted out of the CSXT building to an awaiting CSXT vehicle. Plaintiff asked Dugger to check the handcuffs as they were too tight and were digging into his wrists and cutting off the circulation. Instead of loosening the handcuffs, Dugger viciously tightened them, causing excruciating pain and the wrists to go numb.

Plaintiff was incarcerated at the Hamilton County Justice Center until June 14, 2006, when he was released on an "Own Recognizance" bond. Upon being released from the Justice Center, plaintiff secured the representation of a criminal defense attorney. On June 26, 2006, the Hamilton County Grand Jury convened on plaintiff's criminal case but declined to indict plaintiff on the charge of receiving stolen property.

For his first claim, plaintiff makes the following allegations: Defendants did not have probable cause to arrest him. They failed to properly investigate the facts prior to swearing to his alleged misconduct in the affidavit. They acted in concert under color of state law, and they acted willfully, callously, wantonly and recklessly and intentionally deprived plaintiff of his civil rights, including his rights not to suffer punishment and not to be deprived of his life and liberty without due process of law. Defendant CSXT failed to establish adequate policies and procedures to properly train and/or supervise defendants Dugger and Minges on appropriate uses of force and other police tactics, which directly led to a deprivation of plaintiff's civil rights.

As his second claim, plaintiff alleges that defendants violated their duties to fully

investigate all allegations before signing an affidavit or complaint against him and to follow police procedures under Ohio law and act reasonably in the arrest of plaintiff without impinging on his health or safety; defendant Dugger committed assault, battery and negligence by handcuffing plaintiff so tightly as to cause him to lose all feeling in his wrists; and as a result of the actions of all defendants, plaintiff suffered humiliation, personal injury, loss of enjoyment of life, and a loss of liberty.

As his third claim, plaintiff alleges that as the employer and principal of the individual defendants, CSXT is vicariously liable for their actions.

The fourth claim is a claim for malicious prosecution based on the allegation that the affidavit signed by defendants lacked probable cause and resulted from information known by them to be false and incomplete.

As his fifth claim, plaintiff alleges that defendants were derelict in their duties by detaining and confining him after being placed upon notice that (1) additional exculpatory information existed which required further inquiry and (2) there was no basis for plaintiff's arrest.

The sixth claim is a claim for intentional infliction of emotional distress based on defendants' "continuing prosecution of the charges against Plaintiff."

### III.  Motion for summary judgment

Defendants move for summary judgment on all claims against them.  Dugger and Minges argue that they are entitled to summary judgment on plaintiff's § 1983 claims because while acting in their capacity as railroad policemen employed by CSXT and vested with police powers by Ohio law, (1) they arrested Nerswick pursuant to a judicially-issued warrant, and (2) a

Hamilton County, Ohio Judge separately found probable cause to hold plaintiff over after his arrest. They further contend that they are entitled to qualified immunity on the § 1983 claims because plaintiff cannot meet his legal burden of establishing that their conduct was "plainly incompetent" or that they "knowingly violated the law."

Defendant CSXT argues it is entitled to summary judgment on plaintiff's § 1983 claims because he does not have a viable federal claim against Dugger and Minges, so there is no basis for holding CSXT liable for a violation of plaintiff's federal rights. Additionally, CSXT contends that it cannot be held liable under § 1983 because plaintiff has presented no evidence of a wrongful or injurious policy or custom of CSXT that resulted in any constitutional injury to him.

Defendants contend that they are entitled to summary judgment on plaintiff's state law claims on the following grounds: (1) plaintiff's claims for malicious prosecution and abuse of process fail because there was probable cause for his arrest; (2) his abuse of process claim fails for the additional reason that there is no evidence of an "ulterior purpose" behind his prosecution; (3) plaintiff has failed to state allegations to support an Eighth Amendment claim; (4) plaintiff cannot proceed on an excessive force claim under the Fourth Amendment because he has conceded that he suffered no physical injury and he complained of no injury; (5) plaintiff's false imprisonment claim fails because the fact that an arrest was made pursuant to a facially valid warrant is normally a complete defense to a claim for false arrest or false imprisonment and, in any event, Dugger and Minges acted with probable cause and are entitled to qualified immunity; and (6) the intentional infliction of emotional distress claim fails because the facts alleged do not support a finding that plaintiff was subjected to extreme or outrageous conduct or that he suffered serious emotional distress.

In response, plaintiff argues that Dugger and Minges had no probable cause to arrest him; they are not entitled to qualified immunity on the § 1983 claims as a matter of law pursuant to *Richardson v. McKnight*, 521 U.S. 399 (1997) because they are private actors even though they were acting under color of state law; CSXT is liable for the actions of its employees, Dugger and Minges, under the doctrine of respondeat superior because CSXT breached its duty to train its employees in the areas of criminal investigation, search and seizures, arrest procedures, and obtaining a warrant; and defendants are liable for false arrest and imprisonment. Plaintiff makes no mention in his memoranda of his excessive force claim under the Fourth Amendment, his Eighth Amendment claim, his malicious prosecution claim, or his claim for intentional infliction of emotional distress. He presents arguments only in support of his claims for wrongful arrest without probable cause in violation of the Fourth Amendment and his claims for false arrest and false imprisonment under Ohio law. In addition, counsel for plaintiff touched briefly on plaintiff's excessive force and intentional infliction of emotional distress claims at oral arguments.

Also at oral arguments, the Court raised the issue of whether defendants' act of taking plaintiff back to CSXT for questioning before transporting him to the Justice Center constituted a false arrest or abuse of process under state law. In their briefs addressing this issue, defendants claim that the facts do not support a finding of any wrongdoing in connection with the questioning at CSXT because plaintiff requested that the officers perform additional questioning; plaintiff consented to additional questioning; his brother was present for support; and they transported plaintiff to the Justice Center less than two hours after his arrest. They reiterate that an arrest based on probable cause defeats a claims of false imprisonment or false arrest under

6

Ohio law.  ***See Radvansky v. City of Olmstead Falls,*** 395 F.3d 291, 315 (6th Cir. 2005).  They

claim that there is no authority under Ohio law to support a finding that the questioning was

unlawful or that it constituted an abuse of process.

Plaintiff counters that defendants had no legal authority to take him to the CSXT office

upon execution of the arrest warrant.  He avers that defendants violated Ohio Rev. Code §

2935.13 and Ohio Crim. R. 4(E)(1)(c)(iii) by failing to take him to the Justice Center

"forthwith."  He claims that an officer who arrests an alleged offender and then fails to take him

"promptly to court without unnecessary delay can be liable for *assault and false imprisonment*."

(emphasis in original).  He cites ***Leger v. Warren***, 62 Ohio St. 500, 57 N.E. 506 (1900), ***Sayre v.***

***Chilcott,*** 1985 WL 9011 (Ohio App. 8 Dist. 1985) (unreported decision) and ***Shobe v. Seneca***

***County Sheriff's Office,*** 2008 WL 440582 (N.D. Ohio 2003) (unreported decision) in support of

his position.

### IV. Undisputed facts

The following facts, with the exceptions noted, are undisputed:[2]

1.      Defendant CSXT, which is headquartered in Jacksonville, Florida, operates an interstate

railroad system, including in the State of Ohio.

2.      Defendants James Dugger and Chris Minges are employed as Special Agents by CSXT in

its police department.  They are both commissioned police officers in Ohio in accordance

with Ohio Rev. Code § 4973.17.  Minges is also a commissioned police officer in

---

[2]The Court's Scheduling Order directed plaintiff to designate defendants' proposed findings of
fact and conclusions of law as true, false or irrelevant.  Plaintiff has, however, left several of the proposed
findings of fact unmarked.  The Court has therefore attempted to glean from the record whether these
particular matters are in dispute.  If plaintiff has not indicated elsewhere in the record that they are
disputed, the Court has accepted the unmarked facts as undisputed.

Kentucky.  Defendants have the authority to make arrests in furtherance of railroad interests, including the protection of railroad property.

3.   Prior to his employment by CSXT, Minges worked in the Hamilton County, Ohio Sheriff's Department, where he received both corrections and patrolman's training. Dugger has been with the CSXT police department or its predecessor since 1974.

4.   On Friday, June 9, 2006, at approximately 11:00 to 11:30 a.m., a truck dropped two large rod-like pieces of aluminum into the road as it turned from Hopple Street onto Burlington Place in front of plaintiff's commercial real estate office in Cincinnati, Ohio.  Howard Ferguson, an independent contractor who was working outside on plaintiff's building when the pieces fell, came in and told plaintiff about the incident.  They came outside and observed vehicles honking and driving onto the sidewalk to avoid the pieces in the road. They picked up the aluminum and put it into a van owned by plaintiff.  They took the aluminum several blocks from plaintiff's office to the Garden Street Iron & Metals, Inc. recycling center ("Garden Street") on Spring Grove Avenue.   Plaintiff sold the aluminum there for $310.00.  Garden Street employee David Holbrook required plaintiff to produce his driver's license and sign a receipt stating that he owned the property.

5.   Plaintiff neither asked for nor received permission from CSXT to sell the metal.  He made no effort to contact CSXT prior to selling the metal.

6.   On the same day Garden Street purchased the metal, it contacted CSXT carman welder R.W. Godbey to report that the facility had purchased two large pieces of aluminum which matched the description of CSXT's "rerailers" (Hoesch rerailing bridges).

7.   Also on that same date, at approximately 12:30 p.m., CSXT general foreman T.J. Grace

8

contacted Dugger and reported that someone had stolen two Hoesch rerailing bridges from a CSXT truck on June 8, 2006. Dugger also learned that minutes earlier, an individual had sold the rerailers at Garden Street.

8.  CSXT used the aluminum rerailers to place derailed cars on the tracks. The replacement cost of the rerailers was over $14,000.00.

9.  Dugger and Godbey went to Garden Street at approximately 1:15 p.m. on June 9, 2006, to continue Dugger's investigation. Godbey positively identified the rerailers as CSXT property.

10.  Holbrook informed Dugger that plaintiff had visited the facility earlier that day to sell the rerailers for their salvage value. He told Dugger and Minges that Garden Street had required plaintiff to present his drivers license as identification and to sign a receipt. Holbrook claimed that the receipt "warrant[ed] that [plaintiff] had 'absolute right and title' to the aluminum," which plaintiff disputes. According to Holbrook, he told plaintiff he needed identification because he thought the aluminum was railroad property, and plaintiff responded by stating that he took the aluminum "from a building I own." Plaintiff denies this.

11.  Dugger and Minges inspected the copy of plaintiff's driver's license and the receipt for the 620 pounds of aluminum with his signature on it, which showed that Garden Street had paid plaintiff over $300.00 for the rerailers. Dugger and Minges also received a video that Garden Street had taken of plaintiff unloading and selling the rerailers.

12.  On Monday, June 12, 2006, Dugger submitted an affidavit to the Deputy Clerk in connection with a warrant for plaintiff's arrest. The affidavit stated that on or about June

9, 2006, plaintiff sold CSXT's rerailing bridges to Garden Street without CSXT's permission. The affidavit further stated that CSXT employee Godbey had identified the rerailers as stolen.

13.    Dugger also submitted a criminal complaint to the Hamilton County Municipal Court Deputy Clerk on June 12, 2006, in connection with obtaining the warrant for plaintiff's arrest. The complaint stated that plaintiff had sold the CSXT rerailers while having reasonable cause to believe they had been obtained through the commission of a theft offense. The complaint further stated that the charges were based on witness statements and personal observation of video tapes.

14.    Dugger obtained a warrant for plaintiff's arrest on June 12, 2006, on the charge of receiving stolen property. The warrant was signed and authorized by a Hamilton County Municipal Court Deputy Clerk.

15.    Late on the afternoon of Monday, June 12, 2006, Dugger and Minges went to plaintiff's home in Kentucky to arrest him. When they failed to find him at home, they contacted him on his cell phone. Plaintiff arranged to meet with Dugger and Minges at approximately 4:00 p.m. the next day, Tuesday, June 13, 2006.

16.    Dugger and Minges obtained a written statement from Holbrook on June 13, 2006, in which he stated that he had

    talked to Tom Nerswick on June 9th regarding alum[inum] scrap which I thought belonged to RR[.] I told Tom I needed ID to buy scrap alum[inum. H]e asked why & I told him I thought they belonged to RR[.] He said he got them from a building he owned.

17.    That same day, Dugger and Minges obtained a written statement from Godbey in which he stated that he was

10

notified by Garden Street Metal that 2 Hoesch Rerailing Bridges were being sold as scrap at there [sic] location at 2815 Spring Grove Ave.  On Friday, June 9, 2006 at about 12:20 p.m. I checked to see who they belonged to since to my knowledge there are only 3 sets in the Cincinnati Area.  After some investigation I found the [sic] they belonged to C.S.X.  I went to Garden Street Metal at approx[imately] 1:15 pm with C.S.X. Special Agent Jim Dugger and discovered that the Hoesch Rerailing Bridges were the ones missing from C.S.X. The missing bridges has [sic] distinguishing dents that were made in use at C.S.X.

18. Dugger and Minges claim that they spoke with plaintiff twice regarding his receipt and sale of the metal two days after plaintiff had sold the rerailers, but plaintiff disputes this.

19. Dugger and Minges executed the arrest warrant on plaintiff on the afternoon of June 13, 2006.  After briefly meeting with plaintiff outside his office, Dugger and Minges took plaintiff to the CSXT police facility where he signed a form titled "Your Rights" at 4:25 p.m. and agreed to provide the officers with a formal written statement.  He was allowed to have his brother James Nerswick, an Ohio Alcohol Control Officer, present for support during the questioning.

20. In the statement, plaintiff gave the following information: "Mr. Furguson [sic] came into my office informing me that a piece of metal was against my car."  Plaintiff further stated that he went outside with "2 clients Mr. Atkinson and Mr. Costas and noticed two big pieces of metal in the roadway."  Plaintiff acknowledged that he sold the metal at Garden Street "approximately 15 minutes" after he first noticed it.  He stated that he had "no further conversation" at Garden Street "other than the lady [sic] thank you."

21. Plaintiff admitted at his deposition that, contrary to his written statement, he was not informed that the metal was against his car."  He further admitted that Atkinson and Costas were not his clients as he had related in his statement but were instead contractors who were assisting him with remodeling.

22.     While plaintiff was at CSXT's police facility, Minges interviewed Ferguson. According to the transcript of their recorded telephone conversation, Ferguson told Minges that on the day in question, he observed the beams fall from a truck into the street; he went inside and told plaintiff that some beams had fallen from a truck and had almost hit plaintiff's car; they came outside and saw cars were driving around the beams and were just barely able to get around them; they put the beams in the back of plaintiff's van; and he drove to Garden Street with plaintiff, where plaintiff recycled the beams.

23.     Minges shared Ferguson's statements with Dugger.

24.     Dugger handcuffed plaintiff at the CSXT police facility on the day of the interrogation and, together with Minges, transported him to the Hamilton County Justice Center, a ten-minute drive.

25.     Plaintiff asked Dugger to "check the cuffs" because they were "on wrong." According to plaintiff's deposition testimony, Dugger agreed to check the cuffs but "clicked" them without looking. Plaintiff had no further discussion with Dugger about the handcuffs and he had no discussion at any time with Minges about the handcuffs. Plaintiff sought no treatment of any kind relating to his arrest and handcuffing.

26.     Plaintiff was arraigned on a charge of receiving stolen property by a judge of the Hamilton County Municipal Court. On June 14, 2006, the judge found that "probable cause" was demonstrated to hold plaintiff over for the Grand Jury to consider the charge. Plaintiff was later released on his own recognizance.

27.     On June 26, 2006, the case went before the Grand Jury. The Grand Jury declined to indict plaintiff on any charges.

## V.  Applicable Law

### A.  Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action.  This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.* at 249 (citing *Cities Serv.*,  391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249.

**B. Employer liability under § 1983/Ohio law**

The issue of whether an employer can be held liable under § 1983 for the actions of an employee usually arises in the context of municipal liability for the acts of its employees. A municipality cannot be held liable under § 1983 on the basis of respondeat superior liability. *Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978). Rather, in order to be held liable for a constitutional violation, the municipality's policy must be the "moving force" behind the violation. *City of Canton v. Harris,* 489 U.S. 378, 389 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id*. These same principles apply to a private corporation which is sued under § 1983 on a respondeat superior or vicarious liability theory. *See Street v. Corrections Corp. of America,* 102 F.3d 810, 818 (6th Cir. 1996).

For state law purposes, plaintiff claims that defendant CSXT is liable for the individual defendants' actions under Ohio Rev. Code § 4905.55, which provides that the act of any officer or person employed by a railroad, while acting within the scope of his employment, is the act of the railroad. Defendants contend that CSXT's liability is governed by Ohio case law which provides that a railroad company is not liable for the wrongful acts of special police officers employed by it "while acting by virtue of their office, unless such wrongful acts occurred in the performance of an act which was *outside* the public duties of such a police officer and which was authorized or ratified by such company." *Darden v. Louisville & N. R. Co.,* 171 Ohio St. 63, 64, 167 N.E.2d 765, 766 (1960) (citing *New York, Chicago & St. Louis Rd. Co. v. Fieback*, 87 Ohio St. 254, 100 N.E. 889 (1912)); *see also Pennsylvania R. Co. v. Deal*, 116 Ohio St.408, 156 N.E.

14

502 (1927).

## VI. Analysis of plaintiff's claims

### A. Amenability to suit under § 1983

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . ." To establish a claim under § 1983, plaintiff must prove that "(1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001).

A private party is considered a state actor for purposes of § 1983 if his conduct may be "fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929, 938-39 (1982)). Among the tests for determining whether a defendant's conduct may be fairly attributable to the state is the "public function test," which requires that the individual exercise powers traditionally reserved exclusively to the state. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978).

The Court finds that defendants Dugger and Minges, though acting in their capacity as employees of a private corporation, CSXT, at the time of the events giving rise to this lawsuit, are amenable to suit under § 1983. Defendants, who were appointed and commissioned to act as police officers pursuant to Ohio Rev. Code § 4973.17, were performing police powers traditionally reserved to the state. Accordingly, these defendants were acting under color of state for purposes of § 1983 when engaged in the activities giving rise to this lawsuit.

15

**B.**     **Entitlement to qualified immunity**

Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A qualified immunity analysis consists of two questions: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may exercise its sound discretion in deciding which of these two prongs should be addressed first in light of the circumstances of the particular case before it. *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808 (2009).

The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. 637, 640 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz*, 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba*, 4 F.3d 429, 432 (6th Cir. 1993)).

A defendant is not entitled to qualified immunity on an unreasonable arrest claim "if no reasonably competent peace officer would have found probable cause." *Leonard v. Robinson,* 477 F.3d 347, 355 (6th Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Conversely, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [the Supreme Court has] indicated that in such cases those officials - like other officials who act in ways they reasonably believe to be lawful - should not be held personally liable." *Anderson*, 483 U.S. at 641. In the case of an

arrest pursuant to a warrant, "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable [citation omitted] will the shield of immunity be lost." *Malley*, 475 U.S. at 344-345.

Not all defendants who may be sued under § 1983 are entitled to claim the benefits of qualified immunity from liability under the statute. *See Richardson*, 521 U.S. 399. To ascertain whether the qualified immunity afforded state officials extends to private individuals who are considered state actors under § 1983, the court must undertake an extensive analysis which examines "both the history and the purposes that underlie government employee immunity." *See id.*, 521 U.S. at 404.

The Court need not undertake the analysis outlined in *Richardson* to determine whether Dugger and Minges as private actors are entitled to assert a qualified immunity defense in this lawsuit. For the reasons explained below, the Court concludes that plaintiff's arrest was supported by adequate probable cause and was effectuated without the use of excessive force. Accordingly, Minges and Dugger's conduct did not violate plaintiff's constitutional rights and they are entitled to summary judgment on this ground. Assuming the qualified immunity defense is available to these defendants as private actors, they are entitled to qualified immunity on the ground that the first prong of the qualified immunity analysis must be resolved in their favor.

**C.     Fourth Amendment claim for wrongful arrest without probable cause**

The Fourth Amendment protects the right of individuals to be free from improper arrest and detention. In order to prevail on a Fourth Amendment wrongful arrest claim under § 1983, a plaintiff must prove that probable cause for his arrest was lacking. *Painter v. Robertson*, 185

F.3d 557, 569 (6th Cir. 1999). The issue of "probable cause" turns on whether the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Mich. v. DeFillippo*, 443 U.S. 31, 37 (1979); *see also Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003). "A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Radvansky*, 395 F.3d at 305 (citing *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). The fact that an individual is later acquitted of the crime for which he is arrested is irrelevant to the validity of the arrest. *DeFillippo*, 443 U.S. at 36.

"[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford* 543 U.S. 146, 153 (2004) (citing *Wren v. United States*, 517 U.S. 806, 812-813 (1996); *Arkansas v. Sullivan*, 532 U.S. 769 (2001)). In other words, the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id*. It is only necessary that the circumstances, viewed objectively, justify the action. *Id*. (citing *Wren*, 517 U.S. at 813 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)).

In general, whether there is probable cause for an arrest presents a jury question, unless only one reasonable determination is possible. *Gardenhire*, 205 F.3d at 315 (citing *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)).

Once probable cause is established, a police officer has "no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999); *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). A police

officer "is under no obligation to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss,* 867 F.2d at 263. This, however, does not mean that officers may make hasty, unsubstantiated arrests with impunity. *Ahlers*, 188 F.3d at 371. Officers who have knowledge of some evidence which is inculpatory and some evidence which is exculpatory "while in the process of determining whether probable cause cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone." *Id*. at 372. On the other hand, the fact that an investigation was not a "model of thoroughness" and "left many reasonable sources of evidence unexplored" will not render an arrest unlawful where there was probable cause based on the information the officer actually had. *Id*.

Whether a particular set of facts suggests that an arrest is justified by probable cause requires an examination of the elements of the crime at issue. Plaintiff was charged with a violation of Ohio Rev. Code § 2913.51, which provides, in relevant part:

> (A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

Based on the undisputed facts in the record before the Court, defendants are entitled to summary judgment on plaintiff's wrongful arrest claim under the Fourth Amendment as only one reasonable determination is possible: Dugger and Minges had probable cause to arrest plaintiff because the information they actually had at the time they made the probable cause determination was sufficient for a prudent person to believe that (1) plaintiff had disposed of property of another, (2) knowing or having reasonable cause to believe the property was stolen.

Defendants received information from Grace, a railroad employee, that the rerailers had been stolen. Garden Street identified plaintiff as the individual who had sold the rerailers at the recycling center and CSXT employee Godbey identified the rerailers that Garden Street purchased from plaintiff as the same ones Grace had reported as stolen. These facts provided reasonable grounds for the officers to believe plaintiff had received stolen property. The fact that defendants were informed both that Garden Street had told plaintiff the rerailers might be railroad property and that plaintiff falsely told Garden Street he had obtained the rerailers from a building he owned provided further probable cause for the officers to believe plaintiff had illicitly obtained the property. Thus, because there was probable cause for defendants Dugger and Minges to believe that all of the elements of § 2913.51 were satisfied, plaintiff cannot pursue his wrongful arrest claim under § 1983.

**D.      Excessive force claim under the Fourth Amendment**

Individuals have a right under the Fourth Amendment to be free from excessive force when police make an arrest or seizure. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989). The Fourth Amendment prohibits unduly tight handcuffing in the course of an arrest. *Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005). Not every allegation of tight handcuffing constitutes excessive force, however. *Id*. Rather, to proceed to trial on this claim, a plaintiff must allege physical injury from the handcuffing. *Id.* at 575-76.

Counsel for plaintiff conceded at oral arguments that the only "injury" plaintiff suffered as a result of his handcuffing was "discomfort . . . however brief that may have been." Plaintiff has not directed the court to any other evidence in the record to show the degree of discomfort he experienced or the duration of the discomfort. Absent any supporting evidence to show that he

was harmed by the handcuffs, plaintiff cannot establish his excessive force claim.

**E.     Respondeat superior liability**

Even if plaintiff were able to show that Dugger or Minges violated his constitutional rights, CSXT would be entitled to summary judgment under § 1983 on the ground that plaintiff has not directed the Court to any specific policies and procedures or inadequacies in training that form the basis for CSXT's liability.  Instead, plaintiff represented at oral argument that such policies and procedures are in the record "through the depositions."  It is not the obligation of the court, however, to comb the record to find evidence or testimony establishing a party's case.  ***See Street v. J.C. Bradford & Co*.**, 886 F.2d 1472, 1479-80 (6th Cir. 1989); ***Baker v. Pfeifer***, 940 F. Supp. 1168, 1183 n. 20 (S.D. Ohio 1996) (Dlott, J.).  Because plaintiff has not cited specific evidence to show that a particular policy of CSXT was the moving force behind a violation of his constitutional rights, defendant CSXT is entitled to summary judgment on plaintiff's claims under § 1983 on this ground.

**F.  False imprisonment/false arrest under Ohio law**

A claim for false imprisonment and a claim for false arrest require proof of the same essential elements.  ***Logsdon v. Hains,*** 492 F.3d 334, 347 (6th Cir. 2007) (citing ***Evans v. Smith***, 97 Ohio App.3d 59, 646 N.E.2d 217, 225 (1994) (emphasis added)).  Each requires proof that the defendant intentionally confined the plaintiff "within a limited area, for any appreciable time, against his will and without lawful justification." ***Evans***, 97 Ohio App.3d at 70, 646 N.E.2d at 224 (citations omitted).  A claim for false arrest or false imprisonment is proper when the individual is "arrested without legal process, or under a void process."  ***Norwell v. Cincinnati,*** 133 Ohio App.3d 790, 810, 729 N.E.2d 1223, 1237 (1999) (citing ***Rogers v. Barbera,*** 170 Ohio

St. 241, 243-44, 164 N.E.2d 162, 164 (1960)).  The only difference between the two claims lies in how each arises:

> In a false arrest, [a] false imprisonment exists, but the detention is by reason of an asserted legal authority to enforce the processes of the law; in a false imprisonment, the detention is purely a matter between private persons for a private end, and there is no intention of bringing the person detained before a court, or of otherwise securing the administration of the law.

*Rogers*, 170 Ohio St. at 243 (quoting 22 Am. Jur. 353, False Imprisonment, §§ 2-3 (1939)).  An arrest warrant issued by a court is a complete defense to an action for false arrest or imprisonment "unless utterly void."  *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir. 2005) (citing *McFarland v. Shirkey*, 106 Ohio App. 517, 151 N.E.2d 797, 802 (1958)).

The Court finds that plaintiff has no cause of action for false imprisonment as the undisputed facts show that defendants detained plaintiff for the purpose of bringing him before the court on the warrant obtained against him.  Plaintiff likewise cannot pursue his claim for false arrest.  Defendants in this case had the legal authority to arrest and detain plaintiff.  The arrest and detention were effectuated pursuant to accepted legal procedures.  Defendants signed out an affidavit and complaint, and the Hamilton County Municipal Court issued a warrant.  Plaintiff has produced no evidence to show that the warrant was void or to indicate that defendants provided any false or misleading information or acted outside of accepted legal process in obtaining the warrant and arresting and detaining plaintiff.  Defendants are entitled to summary judgment on plaintiff's false arrest and false imprisonment claims.

## G.  Abuse of process

"Abuse of process occurs where someone attempts to achieve through use of the court that which he is himself powerless to order."  *Robb v. Chagrin Lagoons Yacht Club, Inc*., 75 Ohio

St.3d 264, 271, 662 N.E.2d 9, 14 (1996).  Unlike the tort of malicious prosecution, which provides a remedy when a proceeding is instituted without probable cause, the tort of abuse of process provides a remedy where a "legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.,* 68 Ohio St.3d 294, 297, 626 N.E.2d 115, 118 (1994) (citing Prosser & Keeton, The Law of Torts 897, § 121  (5th ed.1984).  Such a situation arises when there is an "act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . ." *Id*. at 298 (citing Prosser at 898).  The elements of the tort of abuse of process are: (1) a legal proceeding has been set in motion in proper form and with probable cause; (2) the proceeding has been perverted (i.e., an act was committed during the process that was not proper in the normal context of the proceeding) in an attempt to accomplish an ulterior purpose for which the proceeding was not designed; and (3) direct damage has resulted from the wrongful use of process.  *Id.; Wolfe v. Little*, 2001 WL 427408, *3 (Ohio App. Dist. 2 . Apr. 27, 2001) (unreported decision).  No liability for abuse of process lies "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Yaklevich,* 68 Ohio St.3d at 298 n.2, 626 N.E.2d at 118.

   The authorities plaintiff has cited do not support a claim for abuse of process based on defendants' act of questioning him at CSXT following his arrest and before taking him to the Justice Center.  Plaintiff relies on Ohio Crim. R. 4, which provides that in the circumstances specified in the rule, an arrested individual must be brought "without unnecessary delay before a court of record" having jurisdiction over the offense.  He also relies on Ohio Rev. Code §

2935.13, which provides that "Upon the arrest of any person pursuant to warrant, he shall forthwith be taken before the court or magistrate issuing the same, if such court be in session or such magistrate available. . ."  Plaintiff apparently suggests that defendants violated these rules by failing to take him to the Justice Center "forthwith" and "without unnecessary delay."  The cases he cites, however, do not support his position.  In those cases, one individual was arrested without a warrant and imprisoned for five days without a hearing or court order (*Leger*, 62 Ohio St. 500, 57 N.E. 506); another individual was arrested without a warrant for committing two minor misdemeanors, charged with two more misdemeanors at the police station, and held for six days before being brought before a judge (*Sayre,* 1985 WL 9011); and a third individual was arrested on a warrant and held for one week before being released without ever having gone before a judicial officer for a bond hearing or appearance (*Shobe*, 2008 WL 440582).  The brief delay occasioned by defendants' questioning here is nowhere near comparable to these delays.  Moreover, plaintiff has not alleged facts to show that defendants' brief questioning of him at CSXT was "an attempt to accomplish an ulterior purpose" outside of the legal proceedings.  Defendants are entitled to summary judgment on plaintiff's abuse of process claim.

**H.      Inflection of emotional distress**

Ohio courts recognize the tort of intentional infliction of emotional distress. *Yeager v. Local Union 20, Teamsters, Chauffers, Warehousemen & Helpers*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983).  The elements of the tort are: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly

intolerable in a civilized community,' . . . 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'" ***Pyle v. Pyle***, 11 Ohio App.3d 31, 34, 463 N.E.2d 98, 103 (1983).

Plaintiff has not presented any evidence that defendants engaged in extreme and outrageous conduct or that he suffered serious mental anguish of a nature that no reasonable man could be expected to endure it. Defendants are therefore entitled to summary judgment on plaintiff's intentional infliction of emotional distress claim.

## VII. Conclusion

In accordance with the foregoing, defendants' motion for summary judgment is **GRANTED.** This case is **DISMISSED** and is **TERMINATED** on the docket of the Court at plaintiff's cost.

**IT IS SO ORDERED**.


S/ Herman J. Weber
HERMAN J. WEBER, SENIOR JUDGE
 UNITED STATES DISTRICT COURT